UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

WASH WORLD INC.,

        Plaintiff,

       v.                                     Case No. 19-C-1562

BELANGER INC., et al.,

        Defendants.

## ORDER DENYING MOTION TO COMPEL DISCLOSURE
## OF ATTORNEY-CLIENT COMMUNICATONS

Plaintiff Wash World Inc. (Washworld) brought an action seeking declaratory relief pursuant to 28 U.S.C. §§ 2201–02 and 35 U.S.C. § 100 *et seq.* that U.S. Patent No. 8,602,041 (the '041 patent), owned by Defendants Belanger, Inc. and Piston OPW, Inc. is invalid, or, if valid, is not infringed by or is unenforceable against Washworld. Defendant Belanger, Inc. filed a counterclaim seeking damages for Washworld's alleged willful infringement of its patent. The matter is before the court on Belanger's motion to compel Washworld to produce all communications between Washworld and its attorneys, Davis & Kuelthau, concerning the infringement and validity of the '041 patent, as well as a deposition witness to discuss those communications. Dkt. No. 56.

### BACKGROUND

In May 2018, Washworld launched its RAZOR® Edge optional package, which included three components—(1) a moving, overhead spray arch, (2) a colored lighting system, and (3) a lighted cover for the arch—that customers could opt to add to a RAZOR car wash system. In July

2018, Belanger sent Washworld a letter alleging that the RAZOR® Edge system infringed its '041 patent. In response, Washworld had Attorney Joseph Heino, a patent attorney with the law firm Davis & Kuelthau, review the allegation that Washworld's car wash system infringed the '041 patent. On August 15, 2018, after completing his review, Attorney Heino sent a letter to Belanger setting forth his opinion that Washworld's RAZOR® Edge system did not infringe the '041 patent and/or that the '041 patent was invalid. Approximately a year later, Washworld received Belanger's response in the form of a second cease and desist letter. Attorney Heino wrote a further letter in response. At the same time, Washworld began working with Davis & Kuelthau civil litigation Attorneys Sherry Coley and Tiffany Woelfel, and on October 24, 2019, commenced this action for declaratory relief.

During discovery, Washworld asserted that it would be relying on an advice-of-counsel defense to Belanger's claim of willful infringement and waived privilege over its pre-litigation communications with Mr. Heino regarding the validity of the '041 patent. Washworld produced those documents relating to its pre-litigation communications with Attorney Heino. But it has refused Belanger's request for communications that occurred after the involvement of Attorneys Coley and Woelfel as trial counsel and the decision to commence the lawsuit against Belanger on the ground that those communications are protected by the attorney-client privilege. Belanger contends that Washworld's waiver of attorney-client privilege extends not only to its communications with Attorney Heino after suit was filed but to all communications with its trial attorneys that relate to infringement or validity. This follows, Belanger contends, both because Heino has appeared in the case as trial counsel and because Washworld's other trial counsel, Attorneys Coley and Woelfel, are members of the same firm. Alternatively, Belanger requests that the court either preclude Washworld from relying on Attorney Heino's August 2018 letter and

2

otherwise relying on an opinion of counsel defense, or limit Washworld's defenses to the arguments articulated in Attorney Heino's letter.

## ANALYSIS

"[Q]uestions of privilege and discoverability that arise from assertion of the advice-of-counsel defense necessarily involve issues of substantive patent law;" thus Federal Circuit law applies. *In re EchoStar Comm'ns Corp.*, 448 F.3d 1294, 1298 (Fed. Cir. 2006). In *EchoStar*, the Federal Circuit determined that a party that relied on the advice of counsel as a defense "waived the attorney-client privilege with regard to any attorney-client communications related to the same subject matter." *Id*. at 1299. However, *EchoStar* concerned in-house counsel; it did not consider waiver resulting from assertion of the advice-of-counsel defense as it relates to trial counsel. The following year, in *In re Seagate Technology, LLC*, 497 F.3d 1360 (Fed. Cir. 2007) (*en banc*), the Federal Circuit sought to clarify the willfulness doctrine and the scope of the waiver of attorney-client privilege, especially relative to the difference between opinion and trial counsel, resulting from assertion of the advice-of-counsel defense. In *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S.Ct. 1923 (2016), the Supreme Court overturned *Seagate*'s two-part willfulness test for determining whether to award enhanced damages because the test was "overly rigid" and inappropriately infringed on district courts' discretion. *Halo* did not address the issue of privilege, however, so *Seagate*'s privilege holding remains the Federal Circuit law governing patent cases.

*Seagate* was an action for mandamus in which the alleged infringer sought review of a district court's order compelling disclosure of all communications by all counsel, including trial counsel, concerning the subject-matter opinion counsel had addressed, i.e., infringement, validity, and enforceability, from when the defendant first learned of the patent until the alleged infringement ceased. The district court had held that, having placed at issue the advice of its

3

opinion counsel and having produced the otherwise privileged opinions communicated to it, Seagate had thereby waived the privilege with respect to all communications not only with opinion counsel, but also with its other attorneys, including trial counsel, concerning the subject matter of the advice. *See Convolve, Inc. v. Compaq Comput. Corp.*, 224 F.R.D. 98, 104 (S.D.N.Y. 2004). After the district court denied its motions for a stay and certification of an interlocutory appeal, Seagate petitioned for a writ of mandamus. The Federal Circuit stayed the discovery orders and *sua sponte* ordered en banc review of the petition. *Seagate*, 497 F.3d at 1367.

The Federal Circuit began its analysis of the waiver question by acknowledging the historic importance of the attorney-client privilege:

> Recognizing that it is "the oldest of the privileges for confidential communications known to the common law," we are guided by its purpose "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The privilege also "recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *Id.*

*Id*. at 1372. Turning to the question of waiver, the court noted that the "'widely applied standard for determining the scope of a [client's] waiver . . . is that the waiver applies to all other communications relating to the same subject matter.'" *Id.* (quoting *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed. Cir. 2005)). "This broad scope," the court noted, "is grounded in principles of fairness and serves to prevent a party from simultaneously using the privilege as both a sword and a shield; that is, it prevents the inequitable result of a party disclosing favorable communications while asserting the privilege as to less favorable ones." *Id.* (citing *EchoStar*, 448 F.3d at 1301). Yet, "[u]ltimately," the court explained, "'[t]here is no bright line test for determining what constitutes the subject matter of a waiver[;] rather courts weigh the circumstances of the disclosure, the nature of the legal advice sought and the prejudice to the

4

parties of permitting or prohibiting further disclosures.'" *Id.* (quoting *Fort James*, 412 F.3d at 1349–50) (second alteration in original).

In addressing waiver resulting from the advice-of-counsel defense to a claim of willful infringement, the court observed that district courts had reached varying conclusions as to whether the waiver extended to trial counsel, with several holding that it did. "Recognizing the value of a common approach" and in light of its new willfulness analysis, the court set out to provide some guidance as to how the question should be addressed. *Id.* at 1373. Rather than focusing on the subject matter of the communications at issue, the court instead looked to "the significantly different functions of trial counsel and opinion counsel." *Id.* The court explained:

> Whereas opinion counsel serves to provide an objective assessment for making informed business decisions, trial counsel focuses on litigation strategy and evaluates the most successful manner of presenting a case to a judicial decision maker. And trial counsel is engaged in an adversarial process. . . . Because of the fundamental difference between these types of legal advice, this situation does not present the classic 'sword and shield' concerns typically mandating broad subject matter waiver. Therefore, fairness counsels against disclosing trial counsel's communications on an entire subject matter in response to an accused infringer's reliance on opinion counsel's opinion to refute a willfulness allegation.

*Id.* The court went on to hold that assertion of the advice-of-counsel defense did not constitute a waiver of privilege over communications with trial counsel because opinion counsel's work is primarily focused on evaluating conduct that occurred before litigation commenced, and trial counsel's work is focused on the adversarial process. *Id*. at 1374. In sum, the court held "as a general proposition, . . . asserting the advice of counsel defense and disclosing opinions of opinion counsel do not constitute waiver of the attorney-client privilege for communications with trial counsel." *Id.* However, the court did not purport to set out an absolute rule. Instead, it concluded that trial courts would remain free to exercise their discretion in unique circumstances to extend waiver to trial counsel, such as if a party or counsel engages in chicanery. *Id*. at 1374–75.

5

Neither party has cited a Federal Circuit case parallel to this one where a party asserting an advice-of-counsel defense has engaged attorneys from the same firm to act as both opinion and trial counsel. In the absence of clear Federal Circuit or Supreme Court precedent on the various circumstances such cases present, district courts across the country have exercised their discretion in balancing fairness to the parties with the demands of the adversarial system, with differing results. *See, e.g.*, *Procom Heating, Inc. v. GHP Grp., Inc.*, No. 1:13CV-00163-GNS, 2016 WL 3659137 (W.D. Ky. May 11, 2016); *Alloc, Inc. v. Pergo, LLC*, No. 00-C-0999, 2010 WL 38008977 (E.D. Wis. Sept. 23, 2010); *Tyco Healthcare Grp. LP v. E-Z-M, Inc.*, No. 2:07-CV-262 (TJW), 2010 WL 2079920 (E.D. Tex. May 24, 2010); *V. Mane Fils, S.A. v. Int'l Flavors & Fragrances Inc.*, No. 06-2304, 2009 WL 1968925 (D.N.J. July 1, 2009).

Belanger argues that, having failed to maintain a wall of separation between opinion counsel and trial counsel, Washworld should be found to have waived its attorney-client privilege as to all communications concerning infringement and validity of the '041 patent with both opinion counsel and trial counsel for the entire period from when Washworld first sought advice from counsel throughout the entire litigation. The waiver of attorney-client privilege and work product immunity extends to the Davis & Kuelthau trial team in the case, Belanger argues, because (1) opinion counsel and trial counsel are from the same firm, and (2) opinion counsel has appeared as trial counsel in the case. Mem. in Support, Dkt. No. 58, at 8. To deny it such information, Belanger contends, would allow Washworld to use selective disclosure "as a sword and a shield." Reply Br., Dkt. No. 62, at 10.

Belanger's argument in large part ignores the substantially different approach to the issue adopted by the Federal Circuit in *Seagate*. As *Seagate* noted, "[b]ecause willful infringement in the main must find its basis in prelitigation conduct, communications of trial counsel have little, if

6

any, relevance warranting their disclosure, and this further supports generally shielding trial counsel from the waiver stemming from an advice of counsel defense to willfulness." 497 F.3d at 1374. Here, the advice of counsel on which Washworld claims it relied was set forth in Attorney Heino's response to Belanger's 2018 cease and desist letter, which was written more than a year before the case was filed. Though a response to the patent holder's cease and desist letter is not the usual way an attorney conveys advice to a client, Washworld claims Attorney Heino's letter memorializes the opinion he provided and forms the basis of Washworld's good faith belief that it was not infringing Belanger's patent. Belanger is free to challenge Washworld's claim at trial, but by asserting it, Washworld does not waive its right to confidential communications with its attorneys throughout the litigation.

To be sure, as the case proceeds, Washworld may receive additional advice from trial counsel that may cause it to question Attorney Heino's opinion. But that is true in every patent case where advice of counsel is asserted as a defense to willful infringement. The advice an alleged infringer receives from its attorney may seem wholly convincing before litigation starts, but less so after the patent holder raises issues or offers arguments that may not have been appreciated or considered. Trial counsel no doubt has an obligation to advise the client of such developments. But that does not make trial counsel's communications discoverable. This is true whether the attorney who provided the earlier opinion works in the same firm or not. Were it otherwise, the defendant in a patent infringement suit could never assert advice of counsel as a defense without waiving attorney-client privilege as to communications with all counsel concerning the key issues in the case. It is for this reason that *Seagate* looked to the pre-litigation phase as the crucial time period for considering attorney advice, notwithstanding the fact the patent infringement is an ongoing offense that can continue after litigation has commenced.

7

The fact that Attorney Heino works for the same firm does not change the analysis. Although Belanger claims that Attorney Heino is also acting as trial counsel and he has entered an appearance in the case, he presumably will not represent Washworld at trial if it maintains its advice-of-counsel defense. The Rules of Professional Responsibility prohibit an attorney from acting as an advocate at a trial in which the attorney is likely to be a necessary witness, though the prohibition does not extend to other attorneys in the firm. Wis. SCR 20:3.7. The opinion on which Washworld claims it relied was provided by Attorney Heino before litigation began and before the litigation attorneys had any involvement. Washworld has already produced for Belanger the letter conveying Attorney Heino's opinions and all related communications, including the communications between Washworld and counsel prior to issuance of the letter, drafts of the letter, and communications regarding Attorney Heino's analysis of Belanger's second cease and desist letter. This is what *Seagate* requires.

True, Attorney Heino's opinion concerning infringement or validity may change as the case proceeds. But it is the alleged infringer's state of mind, not its attorney's, that is at issue in the defense to a claim of willful infringement. And according to *Seagate*, it is the alleged infringer's state of mind at the inception of the lawsuit that is key. In *Seagate*, the court noted "a willfulness claim asserted in the original complaint [or counterclaim] must necessarily be grounded exclusively in the accused infringer's pre-filing conduct." *Seagate*, 497 F.3d at 1374. While *Seagate* suggested that post-litigation willful infringement could be addressed in a motion for a preliminary injunction, the court also recognized that "in some cases a patentee may be denied a preliminary injunction despite establishing a likelihood of success on the merits, such as when the remaining factors are considered and balanced." *Id.* The court nevertheless rejected the notion that the potential relevance of counsel's advice after litigation had commenced warranted the

8

Case 1:19-cv-01562-WCG   Filed 12/11/20   Page 8 of 9   Document 89

complete waiver of the attorney-client privilege as to such communications throughout trial. That is exactly what Belanger seeks here.

For these reasons, Belanger's motion to compel disclosure of attorney-client communications beyond those already disclosed is denied. The court's ruling, however, is not final. *Seagate* made clear that "trial courts remain free to exercise their discretion in unique circumstances to extend waiver to trial counsel, such as if a party or counsel engages in chicanery [and that] rules concerning privileges are subject to review and revision." *Id.* at 1374–75. Belanger has not demonstrated the existence of unique circumstances or chicanery at this time so as to persuade the court that the general rule recognized in *Seagate* should not apply. If that occurs, the court can revisit the issue. On the record now before the court, however, Belanger's motion to compel (Dkt. No. 56) is **DENIED**.

**SO ORDERED** at Green Bay, Wisconsin this 11th day of December, 2020.

> s/ William C. Griesbach
> William C. Griesbach
> United States District Judge