UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

WASH WORLD, INC.,

        Plaintiff,

        v.                                            Case No. 19-C-1562

BELANGER, INC., et al.,

        Defendants.

---

## DECISION ON INDEFINITENESS AND CLAIM CONSTRUCTION

---

    Plaintiff Wash World, Inc. brought this action for declaratory relief against Defendant Belanger, Inc., seeking a determination that Wash World's car wash systems do not infringe U.S. Patent No. 8,602,041 (the '041 Patent), to which Belanger is the assignee and which in general claims an automated car wash system with various lighting components. Wash World also seeks a determination that the '041 Patent is invalid. The case is before the Court for claim construction and on Wash World's motion on indefiniteness and claim construction.

## LEGAL STANDARD

    A patent consists of both a written description of the invention and claims that define it. The written description, which usually includes drawings of various embodiments and their components, is referred to as the "specification" of the patent. The specification ends with one or more numbered sentences that are the patent's "claims." The claims define the invention and set forth the metes and bounds of the patent.

    Claim construction is an issue of law for the Court. If a material issue in the case, such as infringement or validity, involves a dispute about the meaning of certain claim language, the Court is required to construe that disputed claim language. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 867, 970–71 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). Only claim language

that is disputed needs to be construed and only to the extent necessary to resolve the dispute. *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999). Claims are construed the same way for both validity and infringement. *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1330 (Fed. Cir. 2003) (citations omitted).

The language of the claim defines the scope of the protected invention. Claim construction thus begins with and focuses on the words of the claim. *See Bell Commc'ns Research, Inc. v. Vitalink Commc'ns Corp.*, 55 F.3d 615, 619–20 (Fed. Cir. 1995). The words of a claim "are generally given their ordinary and customary meaning." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). How a person of ordinary skill in the art understands those claim terms provides an objective baseline for claim construction. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (en banc). In attempting to determine the meaning of disputed claim language, the Court must look to "those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean." *Id.* at 1314. "Those sources include the words of the claims themselves, the remainder of the specifications, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Id.* (internal quotations omitted). Extrinsic evidence is "less significant" and "less reliable" than the intrinsic record in determining the meaning of the claim language, and thus, to the extent that the Court considers extrinsic evidence, it does so in the context of the intrinsic evidence and is cognizant of "the flaws inherent" in such evidence. *Id.* at 1317–19.

"The claims, not specification embodiments, define the scope of patent protection. The patentee is entitled to the full scope of his claims" and is not limited "to his preferred embodiment" and the Court will not "import a limitation from the specification into the claims." *Kara Tech Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1348 (Fed. Cir. 2009); *Comaper Corp. v. Antec, Inc.*, 596 F.3d

2

1343, 1348 (Fed. Cir. 2010) (cautioning "against confining the claims to [preferred] embodiments"). Even where "a patent describes only a single embodiment, the claims should not be construed as limited to that embodiment" absent a clear disavowal of claim scope. *Phillips*, 415 F.3d at 1323; *see also Linear Tech Corp. v. ITC*, 566 F.3d 1049, 1057–58 (Fed. Cir. 2009) (explaining that it is improper to limit a claim to embodiments described in the specification where "there is no clear intention to limit the claim scope").

The Court may also consider the patent's prosecution history, including reexamination proceedings. *Phillips*, 415 F.3d at 1317. The prosecution history, which is part of the "intrinsic evidence," consists of the "complete record of the proceedings before the USPTO and includes the prior art cited during the examination of the patent." *Id.* "[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.* The prosecution history includes any arguments or amendments made by the applicant in securing patent rights and these arguments and amendments may be considered during the claim construction process. *Southwall Techs. Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995). A patentee may modify the "meaning of a claim term by making a clear and unmistakable disavowal of scope during prosecution." *Purdue Pharma L.P. v. Endo Pharms., Inc.*, 438 F.3d 1123, 1136 (Fed. Cir. 2006).

The Patent Act requires that a patent specification "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention." 35 U.S.C. § 112(b). A patent claim is indefinite if it is shown by clear and convincing evidence that the claim, read in the light of the specification and the prosecution history, fails to inform those skilled in the art about the scope of the invention "with

reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). This test "mandates clarity, while recognizing that absolute precision is unattainable." *Id.* at 910.

Indefiniteness is a matter of claim construction, and the same principles that generally govern claim construction are applicable to determining whether allegedly indefinite claim language is subject to construction. *Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1319 (Fed. Cir. 2008). Indefiniteness, like claim construction, is a question of law. *Id.* A court may also rely on expert testimony in determining whether a claim term is indefinite. *See, e.g., Berkheimer v. HP Inc.*, 881 F.3d 1360, 1364 (Fed. Cir. 2018).

## ANALYSIS

The '041 Patent describes a "vehicle spray washer with lighted spray arm." The patent describes a "spray-type car wash system" with an overhead carriage that can move the length of a wash bay where a single or "pair of laterally opposed spray arms depend from the carriage. During vehicle entry into the bay, LED-based lights running down the length of each arm are caused to flash to help the driver center a vehicle between the arms. Cushioning and breakaway features protect the arm from damage." '041 Patent Abstract, Dkt. No. 1-1. Wash World asserts that seven terms require construction and that three terms (including one requiring construction) are indefinite, rendering the claims invalid. Belanger asserts that all terms should be given their plain and ordinary meanings, and therefore does not seek construction of any terms.

### A. Wash area

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction | Court's Construction |
|---|---|---|---|
| Wash area (Claims 1, 7 and 15, and all dependent claims | area in which a vehicle to be washed is positioned | No construction necessary | No construction necessary |

The term "wash area" is found in Independent Claims 1, 7, and 15. Claim 1 teaches a "spray-type washer for vehicles comprising:"

4

> a rail system extending longitudinally over a wash area;
> a carriage mounted on the rail system for travel there along;
> an elongate spray arm dependingly mounted from the carriage so as to extend substantially vertically into the wash area for controlled travel relative to a vehicle in the area; said arm comprising a fluid conduit and a plurality of vertically spaced nozzles arranged along a vertical axis for directing fluids laterally of the arm toward a vehicle in the wash area; . . .
> a control system for placing the arm in a target position in the wash area and activating the lighting system to illuminate the arm in response to entry of a vehicle into the wash area.

'041 Patent, col. 4 l. 53–63, col. 5 l. 4–7. Claim 7 teaches a car wash system comprising:

> a carriage for translating a vertically oriented spray arm relative to a predefined wash area;
> wherein the vertically oriented spray arm is dependingly mounted from the carriage so as to extend substantially vertically into the wash area for controlled travel to a vehicle in the area; said arm comprising a fluid conduit . . . for directing fluids laterally of the arm toward a vehicle in the wash area; . . . .

*Id.*, col. 5 l. 25–33. Claim 15 makes the same initial claims as in Claim 1, differing only in the last phrase, which recites "a control system for activating the lighting system to illuminate the sources such that the illumination is visible to a vehicle driver entering said spray type washer." *Id.*, col. 6 l. 25–45.

Wash World contends that "wash area" is indefinite, but in the alternative, argues that it should be construed as the "area in which a vehicle to be washed is positioned." A claim is invalid for indefiniteness if its language, when read in light of the specification and the prosecution history, "fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus,* 572 U.S. at 901. When indefiniteness is alleged, the reviewing court should apply the general principles of claim construction, namely reviewing the claim language, specifications, and prosecution history of the patent to determine whether the scope of a term can be determined with reasonable certainty. *Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1332 (Fed. Cir. 2010). Here, the term wash area can be determined with reasonable certainty and therefore is not indefinite.

In support of its proposed construction, Wash World points to language in Claim 1 highlighting the positioning of the components over, adjacent to, and extending or being directed "toward" or "into" the wash area. Wash World's expert, Dr. Rice, asserts in his invalidity report that "wash area" and "wash bay" cannot be the same because the wash area must be contained within the wash bay. Rice Expert Rep. at 12, ¶¶ 37–38, Dkt. No. 94-12. Belanger counters that the term wash area is readily understandable and refers to the area where the vehicle will be washed. Though it does not request such a construction, Belanger acknowledges that wash area is generally interchangeable with the term "wash bay," heavily citing comments by their retained expert, Dr. Reinholtz, in which he uses the terms interchangeably. Def.'s Resp. Br. at 10, Dkt. No. 101 (quoting various statements by Dr. Reinholtz such as "'a POSITA [person of ordinary skill in the art] would understand that the patent claim uses the language 'wash area' to describe the 'wash bay' of the washer"). Belanger also cites to the file history, including the fact that the prior art, such as the Huntington patent (U.S. Patent No. 7,438,075), claimed a spray-type washer that included a "rail system that extends longitudinally over a wash bay." *Id.* at 11; *see also* '075 Patent col. 2 l. 36–37.

The Court agrees that no construction is needed. A person of ordinary skill in the art (POSITA) would understand that the term "wash area" simply means the area where the vehicle will be washed. As the claims make clear, the wash area is the area over which the car wash's rail system is mounted, into which the spray arm extends, and in which the car being washed is located. This meaning is clear from the claims and specification, and nothing in the prosecution history suggests that the inventor disavowed this meaning or limited it in any way.

Wash World's proposed construction would limit the wash area to "the area in which the vehicle to be washed is positioned." But this would exclude at least some of the space over which the rail system is mounted, as well as some of the space occupied by the depending spray arms

6

that "extend substantially vertically into the wash area." '041 Patent col. 4 l. 56–58. It is clear from claims and specification that the wash area is larger than the location where the vehicle is positioned. Wash World cites no evidence, either from the specification or the prosecution history, that the inventor intended to limit the term in such a way. The Court therefore rejects Wash World's proposed construction and concludes that no construction is needed.

**B. Positions relative to the wash area**

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction | Court's Construction |
|---|---|---|---|
| Predefined wash area (Claim 7 and dependent claims 8–14) | Substantially centrally within a wash area | No construction necessary | No construction necessary |
| Target position in the wash area (Claim 1 and dependent claims 2–6) | A position centrally located in the wash area and directly in front of the vehicle; a center position | No construction necessary | No construction necessary |
| Placing the arm in the target position in the wash area (Claim 1 and dependent claims 2–6) | Placing the arm near the center of the wash area and directly in front of the vehicle; a center position | No construction necessary | No construction necessary |

Wash World urges the Court to construe three terms that specify locations within the wash area found in Claims 1 and 7. Claim 7 teaches that the system comprises "a carriage for translating a vertically oriented spray arm relative to a predefined wash area," '041 Patent col. 5 l. 25–26, and Claim 1 teaches that the washer includes "a control system for placing the arm in a target position in the wash area . . . ," *id.*, col. 5 l. 4–5. Wash World argues that modification of "wash area" with the words "predefined" and "target" means that they require specific locations within the wash area. Pl.'s Br. at 30. Wash World points to the summary of the invention, which explains that the invention helps "the driver navigate the vehicle to a predetermined position which may be

7

substantially centrally within a bay." *Id.* (citing '041 Patent col. 1 l. 38–45). Belanger states that the terms involved have no specialized meaning outside of their plain and ordinary meanings and that Wash World is unnecessarily trying to narrow their meanings. *See* Def.'s Resp. Br. at 24–29. The Court agrees that the terms are understandable under their plain and ordinary meanings and require no further construction.

The '041 Patent claims teach one or two spray arms with lighting systems that extend into either a predefined or target position in the wash area. Wash World argues that failure to construe the terms target or predefined would render them superfluous and directs the Court's attention to the specifications to help clarify their definitions. *See, e.g.*, Pl.'s Br. at 30 ("Although the Claims of the '041 Patent do not provide a construction for 'predefined wash area,' the specification may provide some guidance."). But when the terms' plain and ordinary meanings suffice to permit a POSITA to understand the nature of the claim, such an exercise is unnecessary. "That claims are interpreted in light of the specification does not mean that everything expressed in the specification must be read into all the claims." *Raytheon Co. v. Roper Corp.*, 714 F.2d 951, 957 (Fed. Cir. 1983). Using the word "predetermined" to describe the phrase "wash area" does not suggest that "wash area" must have a different meaning. As Belanger notes, the wash area is predetermined by the location and operation of the equipment that performs the washing.

The phrase "target position" likewise is not limited to a specific point within the "wash area." Instead, it refers to a location within the wash area that will differ, depending on the embodiment of the invention claimed. Wash World's insistence that the target position be limited to a specific point within the wash area improperly limits the claim language to an embodiment described in the specification. The terms in question relate to the movement or location of the arm or arms relative to the wash area, but because the actual positions within the wash area may vary depending on the embodiment of the invention, no precise location can be provided without

8

unreasonably narrowing the claims. The Court therefore rejects Wash World's proposed constructions and chooses instead to apply the plain meaning of the terms.

**C. Outer cushioning sleeve**

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction | Court's Construction |
|---|---|---|---|
| Outer cushioning sleeve (Claim 7 and dependent claims 8–14) | Thick sleeve of extruded foam plastic that acts as a protective cushion to prevent damage | No construction necessary | No construction necessary |
| Partially enclosed within an outer cushioning sleeve (Claim 7 and dependent claims 8–14) | Substantially surrounded by the outer cushioning sleeve | No construction necessary | No construction necessary |
| Outer cushioning sleeve that encloses the fluid conduit of the spray arm (Claim 7 and dependent claims 8–14) | Outer cushioning sleeve that fully surrounds the fluid conduit of the spray arm | No construction necessary | No construction necessary |

Wash World next asks the Court to construe three terms found in Claim 7 that reference "an outer cushioning sleeve." Belanger again contends that these phrases should be given their plain and ordinary meanings and that no additional construction is warranted. The Court agrees that the terms do not require additional construction and that Wash World's proposed constructions would unnecessarily narrow the claims.

"The terms used in the claims bear a 'heavy presumption' that they mean what they say and have the ordinary meaning that would be attributed to those words by a person skilled in the relevant art . . . . Moreover, unless compelled otherwise, a court will give a claim term the full range of its ordinary meaning as understood by persons skilled in the relevant art." *Texas Digital Systems, Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1202 (Fed. Cir. 2002) (citations omitted).

9

Although Wash World invites the Court to rely on the intrinsic evidence to narrow these terms, "[c]onsulting the written description and prosecution history as a threshold step in the claim construction process, before any effort is made to discern the ordinary and customary meanings attributed to the words themselves, invites a violation of [the] precedent counseling against importing limitations into the claims." *Id.* at 1204.

Claim 7 teaches a "spray-type car wash system comprising," in part, " . . . a lighting system comprising a plurality of light sources carried by the arm . . . , wherein at least a portion of the light sources and at least a portion of the nozzles are partially enclosed within an outer cushioning sleeve that encloses the fluid conduit of the spray arm." '041 Patent col. 5 l. 24, 35–36, 38–41. The outer cushioning sleeve is designed to at least partially surround the light sources and nozzles in order to provide protection in case of collision. That much is readily apparent from the claim and the specifications of the patent. Wash World points to Dependent Claim 4 as describing a "protective plastic cushion" surrounding the conduit on the arm, and the specifications that refer to "soft or resilient arm structures . . . to prevent damage in the event of inadvertent collision," as supporting a narrower construction. Pl.'s Br. at 37–38. But that additional information does not contradict Belanger's position that the "outer cushioning sleeve" and associated terms do not require further construction. In this case, "outer cushioning sleeve," "partially enclosed," and "encloses" are perfectly understandable when their components are given their plain and ordinary meanings—i.e., cushion ("to protect against force or shock"), sleeve ("a tubular part designed to fit over another part"), and enclose ("to surround" or "to confine"). *See* MERRIAM-WEBSTER DICTIONARY, *available at* https://www.merriam-webster.com/dictionary. Consequently, Wash World has failed to rebut the presumption that the three terms should be given their ordinary meanings, and the Court will give the full range of ordinary meaning to the terms in question. *Texas Digital Systems*, 308 F.3d at 1202.

### D. Lighting system

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction | Court's Construction |
|---|---|---|---|
| A lighting system comprising a plurality of light sources carried by the arm and distributed along substantially the entire vertical length of the arm so as to be capable of producing illumination along substantially the entire vertical length of the arm (Claim 1 and dependent claims 2–5) | A lighting system of a plurality of light sources that are located along and capable of creating illumination along most of the vertical length of the arm | No construction necessary | No construction necessary |
| A lighting system comprising a plurality of series connected light sources extending along a substantial majority of the vertical length of the arm so as to be capable of illuminating substantially the vertical length of the arm which must be able to illuminate most of the vertical length of the arm (Claim 15 and dependent claim 16) | A lighting system which must include a plurality of series connected lighting sources located along most of the vertical length of the arm which must be able to illuminate most of the vertical length of the arm | No construction necessary | No construction necessary |
| The lighting system (Claims 1, 15 and dependent claims 2–5, 8–9, 12 and 16) | The lighting system previously identified within the Independent Claim, with all limitations defined within the Independent Claim | No construction necessary | No construction necessary |

Wash World seeks construction of several additional phrases and/or terms used in portions of claims describing the lighting system. These terms relate to the nature, location, and function of the lighting system. Claims 1 and 7 teach, in part, "a lighting system comprising a plurality of

11

light sources carried by the arm and distributed along substantially the entire vertical length of the arm so as to be capable of producing illumination along substantially the entire vertical length of the arm." '041 Patent col. 4 l. 63–67, col. 5 l. 34–38. Wash World argues that the plain and ordinary meaning of these claims can be achieved by eliminating the word "comprising" and substituting for the balance of this component "a lighting system of a plurality of light sources that are located along and capable of creating illumination along most of the vertical length of the arm." Pl.'s Br. at 41. Belanger argues that the claim language highlighted by Wash World is clear and needs no construction. Def.'s Resp. Br. at 33. Belanger also contends that the word "comprising" means "including," and that Wash World is improperly attempting to limit the lighting system to the lighting located on the arm. *Id.* at 34. Belanger points to several embodiments which it notes describe lights in addition to those "carried by the arm" in support of its argument that Wash World's proposed construction improperly narrows the claim.

Just as the specification cannot be used to narrow a claim, however, neither can the specification, and the embodiments described therein, be used to broaden the claims beyond what the claim language reasonably allows. The claim language at issue addresses the lighting system carried by the spray arm, not other lights that may be located in other areas of the wash assembly. The claim language at issue is not so broad as to cover other lights that are not carried by the spray arm or arms. But this does not mean that Wash World's construction should be adopted. Belanger is correct that the word "comprising" is open-ended and means "including." *See Regeneron Pharm., Inc. v. Merus N.V.*, 864 F.3d 1343, 1352 (Fed. Cir. 2017) ("Because 'comprise' is inclusive or open-ended, the use of the term does not exclude unrecited elements."); *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 811 (Fed. Cir. 1999) ("[T]he signal 'comprising' . . . is generally understood to signify that the claims do not exclude the presence in the accused apparatus or method of factors in addition to those explicitly recited."); *see also Scanner Techs.*

*Corp. v. ICOS Vision Sys. Corp., N.V.*, 365 F.3d 1299, 1301, 1305–06 (Fed. Cir. 2004) (concluding district court erred in construing "the apparatus comprising: an illumination apparatus" to permit only a single light source). There is no reason to limit the claim as Wash World's construction suggests.

The remaining language limiting the lighting system claimed is in need of no construction. The proposed construction requested by Wash World simply substitutes similar terms but does not add to the clarity or meaning of the language used in the claim. Substituting "located along and capable of creating illumination along most of the vertical length of the arm" for "distributed along substantially the entire vertical length of the arm so as to be capable of producing illumination along substantially the entire vertical length of the arm" may be slightly more succinct, but it does not add appreciably to the understanding a person of ordinary skill in the art is likely to gain. Accordingly, the Court concludes that no construction is necessary. Neither the specification, nor the prosecution history, support a narrower construction than the plain and ordinary meaning of the language used conveys.

### E. First line and second line are not indefinite

Wash World also contends that the terms "first line" and "second line" as used in Claims 1 and 15 are indefinite. Belanger responds that the terms are "clear and readily understandable to the POSITA." Defs.' Resp. Br. at 12. "A claim is considered indefinite if it does not reasonably apprise those skilled in the art of its scope." *IPXL Holdings, LLC v. Amazon.com, Inc.*, 430 F.3d 1377, 1383–84 (Fed. Cir. 2005).

Claim 1 teaches "a lighting system comprising a plurality of light sources . . . , wherein the light sources are arranged along a first line and the spaced apart nozzles [for directing fluids laterally of the arm toward a vehicle in the wash area] are arranged along a second line, and wherein the first and second lines do not intersect . . . ." '041 Patent col. 4 l. 63–67, col. 5 l. 1–3. Claim

13

15 recites identical language with respect to the arrangement of the "lines." *See* '041 Patent col. 6 l. 35–42. Both claims involve "an elongate spray arm dependingly mounted from the carriage" upon which these lines, first of either a "plurality of light sources" or of "a plurality of series connected light sources," and then of "spaced apart nozzles," are mounted. *See* '041 Patent, Claims 1 and 15. Wash World argues that because Claims 1 and 15 do not identify the location and direction of the nozzles and light sources, unlike, for example, Dependent Claim 11, they are indefinite. Pl.'s Br. at 16–17. Wash World maintains that the prosecution history shows that the examiner added the language in question in order to overcome a prior rejection for obviousness, but that when doing so, the examiner failed to also include guidance about limitations on the lines. *Id.* at 17–18. Wash World's expert, Dr. Rice, also concludes that the terms are indefinite because they lack disclosure in the patent specifications. Rice Expert Rep. at 12, ¶ 40. Belanger disputes Wash World's conclusion by pointing to the specifications in the patent, arguing that they both describe and depict the lines in question. Def.'s Resp. Br. at 12. In support of that position, Dr. Reinholtz explains that Figures 1 and 2 depict the arrangement of the lines, and that the patent and prosecution history show that the invention includes a linear light system running along the vertical length of the arm(s). Reinholtz Validity Rep. at 9–10, ¶¶ 33–36, Dkt. No. 103-1.

The Court concludes that the terms "first line" and "second line" as used in Claims 1 and 15 are not indefinite. As Dr. Reinholtz opines, "[a] POSITA would easily understand "first line" and "second line" as they are used in claims 1 and 15, to refer to two lines in which the nozzles and light sources are arranged, especially in light of these disclosures in the specification and file history." *Id.* ¶ 36. The terms refer to the linear arrangement of the lights and the nozzles along the spray arms in a manner in which the line of lights and the line of nozzles do not intersect. The claims are not indefinite.

## CONCLUSION

For the reasons set forth above, the Court concludes that no construction is needed on the disputed claim terms.  The Court further concludes that the claims are not indefinite.  Wash World's motion for invalidity on grounds of indefiniteness (Dkt. No. 93) is therefore **DENIED**, and summary judgment on that defense is **GRANTED** in Belanger's favor.  Finally, Belanger's motion for leave to file a sur-reply in support of its claim construction brief (Dkt. No. 108) is **GRANTED**.  The Clerk is directed to detach and file the sur-reply.

**SO ORDERED** at Green Bay, Wisconsin this 9th day of March, 2021.

s/ William C. Griesbach
William C. Griesbach
United States District Judge