UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

WASH WORLD INC.,

        Plaintiff,

        v.                                     Case No. 19-C-1562

BELANGER INC., et al.,

        Defendants.

---

**DECISION AND ORDER GRANTING-IN-PART AND DENYING-IN-PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

---

Plaintiff Wash World, Inc. brought this action for declaratory relief against Defendant Belanger, Inc., seeking a determination that Wash World's car wash systems do not infringe U.S. Patent No. 8,602,041 (the '041 Patent), to which Belanger is the assignee and which, in general, claims an automated car wash system with various lighting components. This matter comes before the Court on Wash World's motion for summary judgment. For the following reasons, the motion will be partially granted.

**BACKGROUND**

The '041 Patent, entitled "Vehicle Spray Washer with Lighted Spray Arm," issued on December 10, 2013. The claimed invention generally relates to an in-bay automatic car wash with a lighted spray system. The patent describes a "spray-type car wash system" with an overhead carriage that can move the length of a wash bay where a single or "pair of laterally opposed spray arms depend from the carriage. During entry into the bay, LED-based lights running down the length of each arm are caused to flash to help the driver center a vehicle between the arms.

Cushioning and breakaway features protect the arm from damage." '041 Patent Abstract, Dkt. No. 1-1.

Belanger asserts Independent Claims 1, 7, and 15 of the '041 Patent and argues that the accused products—the Razor EDGE car wash system, the Razor combined with a LumenArch/Spectra Ray lighting system, and the Razor or Razor XR7 combined with a LumenArch—infringe the asserted claims. Belanger contends that the Independent Claims are directed to different embodiments that combine an in-bay automatic car wash having a lighted spray arm with other unique features.

Wash World's Razor product is a touch-free, in-bay automatic car wash system. Pl.'s Proposed Findings of Fact (PPFOF) ¶ 1, Dkt. No. 117. The Razor EDGE products include the LumenArch, the SpectraRay, and the Hyperflex. Wash World describes the LumenArch as a blue lighted spray arm cover that is placed over a Razor spray arm. *Id.* ¶¶ 20–21. Belanger asserts that the LumenArch is marketed and sold as a complete spray arm option that differs from the Razor spray arm. Def.'s Resp. to PPFOF ¶ 20, Dkt. No. 137. The SpectraRay consists of four individual strips of LED lights, in the colors of red, magenta, blue, and green, and its lights are only located on the carriage cover. PPFOF ¶¶ 65–66.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the Court must view the evidence and make all reasonable inferences in the light most favorable to the non-moving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). The party opposing the motion for

summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

### A. Invalidity

Wash World asserts that the '041 Patent should be found invalid for a number of reasons. Because a patent is presumed valid under 35 U.S.C. § 282, the party challenging the patent must establish the invalidity of the patent "by clear and convincing evidence." *Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 97 (2011); *see also Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1359–60 (Fed. Cir. 2007) (noting that the "burden of proof never shifts to the patentee to prove validity" (citation omitted)). Wash World maintains that the '041 Patent is invalid for lack of enablement and lack of written description. The written description and enablement requirements are set out in 35 U.S.C. § 112. That section provides:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

35 U.S.C. § 112(a).

To satisfy the enablement requirement, a challenger must show that "a person of ordinary skill in the art would not be able to practice the claimed invention without 'undue

3

experimentation.'" *Enzo Life Sciences, Inc. v. Roche Molecular Sys., Inc.*, 928 F.3d 1340, 1345 (Fed. Cir. 2019) (quoting *Alcon Research Ltd. v. Barr Labs., Inc.*, 745 F.3d 1180, 1188 (Fed. Cir. 2014)). In other words, the specification must be sufficiently detailed so that "at the time of filing the application one skilled in the art, having read the description, could practice the invention without undue experimentation." *Cephalon, Inc. v. Watson Pharm., Inc.*, 707 F.3d 1330, 1336 (Fed. Cir. 2013) (citation omitted). "Enablement is a question of law based on underlying factual findings." *MagSil Corp. v. Hitachi Global Storage Techs., Inc.*, 687 F.3d 1377, 1380 (Fed. Cir. 2012) (citation omitted). To satisfy the written description requirement, "the description must clearly allow persons of ordinary skill in the art to recognize that the inventor invented what is claimed." *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (quotation marks, citations, and brackets omitted). That is, "the test for sufficiency is whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Id.* (citation omitted). The written description inquiry is a question of fact. *Id.*

Wash World asserts that the '041 Patent lacks enablement because the specification does not contain sufficient detail for a person of ordinary skill in the art to determine where the "wash area" is or how to identify it. It contends that, because the '041 Patent specification does not provide any guidance or detail regarding the size or location of the wash area, a person of ordinary skill in the art would be unable to discern the claimed invention. Wash World also argues that Independent Claim 1's requirement of a "control system for placing the arm in a target position in the wash area" lacks enablement because the '041 Patent inventor was unable to describe the "target position in a wash area" in "full, clear, concise, and exact terms." Dkt. No. 114 at 16–17.

It also asserts that the claim term "target position in the wash area" is broader than the disclosures within the '041 Patent specification.

As an initial matter, Belanger asserts that the enablement and written description arguments regarding the term "target position in the wash area" are untimely because they were raised for the first time in the instant motion. But Wash World asserted that the claim was invalid for lack of enablement in its preliminary invalidity contentions, Dkt. No. 125-5 at 9–10; therefore, the argument is not untimely. In any event, the Court finds that a genuine dispute of material fact exists as to whether a person of ordinary skill in the art knows how to make a wash area and would understand what a "target position" is. Belanger's expert, Dr. Charles Reinholtz, has provided opinions explaining why the '041 Patent enables a person of ordinary skill in the art to practice the "wash area" of the claims and that a person of ordinary skill in the art would understand where the target position is based on the plain and ordinary meaning of the claim term. Given this material dispute of fact, the Court denies Wash World's motion for summary judgment on invalidity based on enablement.

As to written description, although Wash World acknowledges that the written description inquiry is ordinarily a question of fact, it asserts that a patent can be held invalid for failure to meet the written description requirement based solely on the patent specification's language. Dkt. No. 114 at 17. Belanger asserts that it has evidence demonstrating that a person of ordinary skill in the art would understand from the specification that the inventors had possession of the invention as claimed. Based on a review of the summary judgment record, the Court is not convinced that there are no genuine issues of material fact regarding whether the specification satisfies the written description requirement. The jury will decide whether the specification adequately demonstrates that the inventors possessed the full scope of the asserted claim.

5

## B. Noninfringement

Next, Wash World asserts that it does not infringe the '041 Patent. To prove infringement, the patent holder must establish by a preponderance of the evidence that "one or more claims of the patent read on the accused device literally or under the doctrine of equivalents." *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310 (Fed. Cir. 2005).

### 1. Direct Infringement

Belanger has accused the Razor EDGE system (the Razor with the LumenArch and SpectraRay lighting system) of infringement. Wash World argues that the LumenArch does not infringe Independent Claims 1, 7, or 15 of the '041 Patent. In particular, Wash World asserts (1) the LumenArch does not infringe Independent Claims 1 or 15 because the LumenArch does not have a control system, the SpectraRay is not part of the "lighting system," and the LumenArch's line of light sources intersects with its line of nozzles; (2) the LumenArch does not infringe Independent Claim 7 because it does not translate its spray arm relative to a predefined wash area, it does not have an outer cushioning sleeve, the LumenArch nozzles are not partially enclosed within an outer cushioning sleeve that encloses the fluid conduit of the spray arm, and the LumenArch light sources are not partially enclosed within an outer cushioning sleeve; and (3) the LumenArch does not infringe the independent claims of the '041 Patent because the spray arm is not dependingly mounted from the carriage.

Although Wash World asserts that the undisputed facts warrant a finding of noninfringement, Wash World acknowledged in its response to Belanger's motion to exclude the invalidity and noninfringement opinions of Wash World's expert that there are factual issues in dispute, including "what the 'lighting system' on the accused products is, whether the LumenArch spray arm cover is a 'cushioning sleeve,' and whether any combination of the accused products

6

infringes the '041 Patent." Dkt. No. 132 at 6. Based on a review of the record, it appears there are factual issues in dispute regarding Wash World's assertions that the SpectraRay is not part of the "lighting system," the LumenArch does not have an outer cushioning sleeve, the LumenArch nozzles are not partially enclosed within an outer cushioning sleeve that encloses the fluid conduit of the spray arm, and the LumenArch light sources are not partially enclosed within an outer cushioning sleeve, and those issues must be resolved by a jury. The Court will now address Wash World's remaining direct infringement arguments.

### a. Control System

Wash World argues that the LumenArch does not infringe Independent Claims 1 or 15 because it does not have a control system. Independent Claim 1 requires "a control system for placing the arm in a target position in the wash area and activating the lighting system to illuminate the arm in response to entry of a vehicle into the wash area." '041 Patent col. 5 l. 4–7. Independent Claim 15 requires a "control system for activating the lighting system to illuminate the sources such that the illumination is visible to a vehicle driver entering said spray type washer." *Id.* col. 6 l. 43–45. Although Wash World argues both Claims 1 and 15 together, its arguments ultimately focus on the elements of Claim 1. It is to those arguments that the Court turns.

Wash World contends that the accused products do not infringe Claim 1 because the spray arm cannot be moved into a "target position" in response to a vehicle entering the wash area. As an initial matter, the Court rejects Belanger's assertion that Wash World's argument is an untimely attempt to limit the claim requirement, as Wash World's contention is based on the plain and ordinary meaning of the claim language. Belanger asserts that the claim only requires that the control system activate the lighting system in response to the vehicle's entry into the wash area; it does not require that the control system place the arm in a target position in the wash area in

7

response to the entry of a vehicle in the wash area as Wash World suggests. But Wash World's position is grammatically correct and is consistent with the patent specification.

The patent specification in the '041 Patent describes the method of operating the device. It reads that a "vehicle approaches the wash bay so as to provide a signal to arm the system by, for example, engaging the floor switch." '041 Patent col. 4 l. 22–24. It instructs that "[a]ssuming a twin arm system, the signal from the floor switch acts through the controller to cause the arms to be moved to the parked position; if a single arm system, the arm is moved to a center position unless a second stationary light post is provided in which case, the movable arm is parked laterally across from it." *Id.* col. 4 l. 25–30. Then, the lights are "illuminated by data line and caused to flash producing bright yellow 'goalpost' effect lighting which guides the driver to place the vehicle centrally between the goalpost arms. If a single arm, the arm serves as a centering target as well as a rough depth gauge. The sign illuminates to tell the driver of the vehicle when to stop." *Id.* col. 4 l. 31–37. Finally, the "wash/rinse cycle then begins wherein the arms are caused to move around the vehicle multiple times to spray the vehicle with prewash, wash, and rinse fluids in accordance with conventional car wash practice." *Id.* col. 4 l. 38–41. In other words, the specification indicates that the control system both places the arm in a target position and activates the lighting system when a vehicle enters the wash area. The Court concludes, as a matter of law, that, when a vehicle enters the wash area, the control system places the arm in a target position and activates the lighting system. Accordingly, the accused products do not infringe Claim 1 of the '041 Patent because the spray arm of the accused products cannot be moved into a "target position" in response to a vehicle entering the wash area. The Court therefore grants Wash World's motion for summary judgment of non-infringement as to Claim 1.

### b. Lines of Light Sources Intersecting with Lines of Nozzles

Wash World asserts that the LumenArch does not infringe Independent Claim 15 because the LumenArch's lines of light sources intersect with its lines of nozzles. Independent Claim 15 requires a "lighting system comprising a plurality of series connected light sources extending along a substantial majority of the vertical length of the arm so as to be capable of illuminating substantially the vertical length of the arm, wherein the light sources are arranged along a first line and the spaced apart nozzles are arranged along a second line, and wherein the first and second lines do not intersect." '041 Patent col. 6 l. 35–42. Wash World contends that the LumenArch contains multiple lines of lights that intersect with the lines of nozzles. Belanger counters that it has evidence confirming that the line of nozzles and line of light sources do not intersect. Dkt. No. 116-8 at 21–24. Specifically, Dr. Reinholtz concluded, based on diagrams and pictures of the LumenArch, that the light sources, or LED lights, are arranged on a vertical line and that the nozzles are arranged on a second vertical line that does not intersect with the line of LED lights. *Id.* at 23. In short, a dispute of fact exists as to whether the claim element is practiced by the accused products.

### c. LumenArch Translating Spray Arm relative to a Predefined Wash Area

Wash World argues that the LumenArch does not infringe Independent Claim 7 because it does not translate its spray arm relative to a predefined wash area. Independent Claim 7 requires "a carriage for translating a vertically oriented spray arm relative to a predefined wash area." '041 Patent col. 5 l. 25–26. Wash World asserts that, because the Razor does not have a predefined wash area, the LumenArch does not translate a spray arm relative to a predefined wash area. It argues that the spray arm is translated relative to the particular vehicle and not a predefined wash area. Belanger asserts that its expert analyzed this claim element and offered his opinion, with

9

citations to supporting evidence, that the accused products have a predefined wash area and that the spray arm can translate around the predefined wash area. *See* Dkt. No. 94-17 at 32; Dkt. No. 116-8 at 56–60. Dr. Reinholtz cited marketing materials and the accused products' owner manuals that show that the car wash system contains a carriage for translating a vertically oriented spray arm relative to a predefined wash area as well as videos that depict the LumenArch spray arm mounted on the carriage and engaging in translation around a predefined wash area. Dkt. No. 116-8 at 57–58.

Citing *SIMO Holdings Inc. v. Hong Kong uCloudlink Network Technology Limited*, 983 F.3d 1367 (Fed. Cir. 2021), Wash World asserts that the opinion of Belanger's expert cannot create a material dispute of fact. While a "party may not avoid summary judgment simply by offering an opinion of its expert that states, in effect, that the critical claim limitation is found in the accused device," a party can preclude the granting of summary judgment by relying on an expert that sets forth the "factual foundation for his infringement opinion in sufficient detail for the court to be certain that the features of the accused product would support a finding of infringement." *Id.* at 1380–81 (internal quotation marks, alterations, and citations omitted). Here, Belanger has presented evidence to create a dispute of fact as to whether this limitation is found in the accused products. Accordingly, summary judgment on this basis is inappropriate.

### d. Spray Arm Dependingly Mounted from the Carriage

Wash World asserts that the LumenArch does not infringe the independent claims of the '041 Patent because it does not have an elongate spray arm dependingly mounted from the carriage. Independent Claims 7 and 15 require an element of a spray arm dependingly mounted from the carriage for controlled travel relative to a vehicle in the area. Wash World maintains that the Razor's spray arm is instead mounted to a trolley which controls the spray arm's movement. It

10

argues that the trolley and the carriage are distinct components. Belanger has presented evidence showing that the spray arm is dependingly mounted to the carriage. *See* Dkt. No. 116-8 at 14–18. Dr. Reinholtz indicated that Wash World's marketing materials and the owner's manuals for the accused products and other schematics depict a spray arm dependingly mounted from the carriage. *Id.* at 14. There is thus a question of fact as to whether the LumenArch is directly mounted to the carriage.

2. **Doctrine of Equivalents**

Belanger's primary theory of infringement for Independent Claim 15 is under the doctrine of equivalents. More specifically, Belanger accuses the Razor and Razor XR-7, when either is combined with the LumenArch, of infringing Independent Claim 15. If literal infringement cannot be proven, a patent may still be infringed under the doctrine of equivalents. *See Gemalto S.A. v. HTC Corp.*, 754 F.3d 1364, 1374 (Fed. Cir. 2014). "To find infringement under the doctrine of equivalents, any differences between the claimed invention and the accused product must be insubstantial." *Brilliant Instruments, Inc. v. GuideTech, LLC*, 707 F.3d 1342, 1346 (Fed. Cir. 2013) (citing *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950)). The Federal Circuit "applies two articulations of the test for equivalence," the function-way-result test and the insubstantial differences test. *Voda v. Cordis Corp.*, 536 F.3d 1311, 1326 (Fed. Cir. 2008). The patentee bears the burden of satisfying one of these tests by a preponderance of the evidence. *Centricut, LLC v. Esab Grp., Inc.*, 390 F.3d 1361, 1367 (Fed. Cir. 2004). A finding of equivalence is a factual determination. *See Radio Steel & Mfg. Co. v. MTD Prods., Inc.*, 731 F.2d 840, 847 (Fed. Cir. 1984).

### a. Function-Way-Result Test and Insubstantial Indifferences Test

Wash World asserts that Belanger's doctrine of equivalents theory fails under both the function-way-result test and the substantial indifferences test. "[U]nder the function-way-result test, an element in the accused device is equivalent to a claim limitation if it 'performs substantially the same function in substantially the same way to obtain substantially the same result.'" *Voda*, 536 F.3d at 1326 (citation omitted). Under the insubstantial differences test, an element in the accused device is equivalent to a claim limitation "if the only differences between the two are insubstantial." *Id.* (internal quotation marks and citation omitted).

Belanger asserts that it has presented sufficient evidence to support its doctrine of equivalents theory through its expert's opinion and analysis. Dr. Reinholtz analyzed the function required by the claims and explained how the functionality was achieved by the accused products. *See* Dkt. No. 116-8 at 112–13. On the current record, the Court is unable to conclude as a matter of law that no reasonable jury could find equivalence. Whether Wash World infringes Independent Claim 15 under the doctrine of equivalents is a triable issue of fact for the jury.

### b. Vitiation

Wash World asserts that an equivalence of the LumenArch with the main power switch would vitiate the control system element of Independent Claim 15. The doctrine of equivalents is foreclosed when a "limitation would be read completely out of the claim—i.e., the limitation would be effectively removed or 'vitiated.'" *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005, 1016 (Fed. Cir. 2006). Vitiation "is not an exception or threshold determination that forecloses resort to the doctrine of equivalents, but is instead a legal conclusion of a lack of equivalence based on the evidence presented and the theory of equivalence asserted." *UCB, Inc. v. Watson Labs. Inc.*, 927 F.3d 1272, 1283 (Fed. Cir. 2019).

Independent Claim 15 requires a "control system for activating the lighting system to illuminate the sources . . . ." '041 Patent col. 6 l. 43–44. Wash World asserts that, allowing an equivalence of the claim limitation to include a simple main power switch, which merely provides power to the product, would vitiate the control system element of the claim. Belanger counters that its doctrine of equivalents theory does not vitiate any claim elements because the accused products include a control system. Dkt. No. 116-8 at 112. If true, Belanger's doctrine of equivalents theory does not vitiate the "control system" requirement of the claim. Therefore, a dispute of fact exists that precludes summary judgment.

### c. Prosecution History Estoppel

Wash World asserts that prosecution history estoppel bars Belanger from arguing that the main power switch is a "control system" under the doctrine of equivalents. "Prosecution history estoppel applies as part of an infringement analysis to prevent a patentee from using the doctrine of equivalents to recapture subject matter surrendered from the literal scope of a claim during prosecution." *Trading Techs. Int'l, Inc. v. Open E Cry, LLC*, 728 F.3d 1309, 1322 (Fed. Cir. 2013). It can occur in two ways: "(1) by making a narrowing amendment to the claim ('amendment-based estoppel') or (2) by surrendering claim scope through argument to the patent examiner ('argument-based estoppel')." *Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*, 460 F.3d 1349, 1363 (Fed. Cir. 2006). Whether prosecution history estoppel applies is a question of law. *Id.* If a patentee makes an argument regarding one claim term that generates an estoppel, "the estoppel will apply to that term in other claims." *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1584 (Fed. Cir. 1995).

Wash World asserts that the '041 Patent prosecution history evidences that the "control system" limitation was added to overcome a rejection for obviousness based on the prior art. Wash

World argues that the original patent claims neither required a control system nor limited the method, structure, or equipment needed to cause the lights to illuminate. But in February 2012, Belanger amended Claim 1 to provide for "a control system for placing the arm in a target position centrally of the wash area and activating the lighting system to illuminate the arm in response to entry of a vehicle into the wash area . . . ." PPFOF ¶ 78. Belanger later introduced control system language that would ultimately become Independent Claim 15. *Id.* ¶ 81. Wash World argues that Belanger "relinquished coverage" of a device or method that does not contain a programmable system that controls the illumination of lights, i.e., a control system, and that Belanger should be barred from asserting that the main power switch on the accused products is the equivalent of a control system. Dkt. No. 114 at 53. The parties seem to dispute the meaning of the term "control system," but they did not ask the Court to construe the term during claim construction. Rather than construe the term at this time, the Court will address it as required as the case proceeds.

Wash World also asserts that prosecution history estoppel bars the use of the SpectraRay to assert infringement under the doctrine of equivalents. Because Belanger is not asserting this combination under its doctrine of equivalents' theory, the Court will not address this argument. Therefore, the Court denies summary judgment on this basis.

### d. Doctrine of Ensnarement

Ensnarement is a defense to patent infringement that bars a patentee from prevailing on a doctrine of equivalents theory of infringement. *See G. David Jang, M.D. v. Boston Sci. Corp.*, 872 F.3d 1275, 1285 (Fed. Cir. 2017). To determine whether an asserted equivalency ensnares the prior art, courts generally engage in a hypothetical claim analysis. *See DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1324 (Fed. Cir. 2009) (citation omitted).

Wash World has created hypothetical claims and has put forth several examples of prior art that it contends would be ensnared by the hypothetical claim. "Under a hypothetical claim analysis, *a patentee* proposes a hypothetical claim that is sufficiently broad in scope to literally encompass the accused product or process." *Ultra-Tex Surfaces, Inc. v. Hill Bros. Chem. Co.*, 204 F.3d 1360, 1364 (Fed. Cir. 2000) (emphasis added); *see also Jang*, 872 F.3d at 1285 ("The burden of producing evidence of prior art to challenge a hypothetical claim rests with an accused infringer, but the burden of proving patentability of the hypothetical claim rests on the patentee." (citation omitted)).

Belanger asserts that Wash World's ensnarement analysis is "flawed" because Wash World constructs a hypothetical portion of a claim that only addresses the control system element and none of the prior art includes a lighted spray arm as claimed. Dkt. No. 136 at 51. Although Belanger disagrees with Wash World's hypothetical claims, it has not presented its own. Indeed, a "helpful first step in an ensnarement analysis is to construct a hypothetical claim that literally covers the accused device." *DePuy Spine*, 567 F.3d at 1324. But the Federal Circuit has not mandated the application of a hypothetical claim analysis in determining whether a doctrine of equivalents theory ensnares the prior art. *See Jang*, 872 F.3d at 1285 n.4 ("The hypothetical claim analysis is not the only method in which a district court can assess whether a doctrine of equivalents theory ensnares the prior art.").

The Court cannot resolve ensnarement on the current record without a hypothetical claim, leaving a material question as to whether Belanger can assert an equivalency that literally covers the accused products. The Court questions whether Belanger will ultimately be able to meet its burden without creating a hypothetical claim. But Belanger need not meet its burden here; it need only show that there remains a genuine issue of material fact as to whether applying the doctrine

of equivalents would ensnare the prior art, which it has.  The Court finds that it is unable to resolve the issue of ensnarement at this time.

## CONCLUSION

For these reasons, Wash World's motion for summary judgment (Dkt. No. 114) is **GRANTED-IN-PART** and **DENIED-IN-PART**.  The motion is granted with respect to noninfringement of Independent Claim 1 of the '041 Patent and denied in all other respects.  Belanger's motion for leave to file a sur-reply (Dkt. No. 148) is **GRANTED**.  The Clerk is directed to detach and e-file the sur-reply (Dkt. No. 148-1).

**SO ORDERED** at Green Bay, Wisconsin this 8th day of July, 2021.

s/ William C. Griesbach  
William C. Griesbach  
United States District Judge
