UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | |
|---|---|
| WASH WORLD INC., <br><br> Plaintiff, <br><br> v. <br><br> BELANGER, INC., <br> PISTON OPW, INC. D/B/A OPW, INC., <br><br> Defendants. | Case No. 1:19-cv-01562-WCG |

**BELANGER, INC.'S REPLY IN SUPPORT OF ITS MOTIONS FOR ENHANCED DAMAGES, ATTORNEY FEES, AND PREJUDGMENT INTEREST**

# TABLE OF CONTENTS

I. PREJUDGMENT INTEREST ............................................................................................1

II. ENHANCED DAMAGES ................................................................................................1

    A. Why Enhanced Damages Are Important Here..........................................................1

    B. The *Read* Factors .....................................................................................................3

        1. *Read* Factor 1 – Copying ...............................................................................4

        2. *Read* Factor 2 – Good Faith Belief of Noninfringement ............................5

        3. *Read* Factor 3 – Litigation Misconduct .......................................................7

            a. Changing Arguments ........................................................................7

            b. Refusal to Produce Discovery...........................................................9

            c. Unreasonable Litigation Positions ...................................................9

        4. *Read* Factor 4 – WashWorld's Size and Financial Condition....................................................................................................10

        5. *Read* Factor 5 – Closeness of the Case ......................................................11

        6. *Read* Factors 6 & 7 – Duration of Infringement and Remedial Action ...............................................................................................12

        7. *Read* Factor 8 – Motivation to Harm .......................................................12

        8. *Read* Factor 9 – Concealment...................................................................12

III. ATTORNEY FEES.........................................................................................................13

    A. This Is an Exceptional Case ...................................................................................13

    B. Belanger's Attorney Fees Are Reasonable .........................................................14

# TABLE OF AUTHORITIES

**Cases**                                                                                                                   **Page(s)**

*Acantha LLC v. DePuy Synthes Sales Inc.*,
    406 F. Supp. 3d 742 (E.D. Wis. 2019) ..........................................................................6, 12, 14

*Advanced Cardiovascular Systems, Inc. v. Medtronic, Inc.*,
    265 F.3d 1294 (Fed. Cir. 2001) ..............................................................................................3, 5

*Cyntec Co. v. Chilisin Electronics Corp.*,
    No. 18-CV-00939-PJH, 2022 WL 1443232 (N.D. Cal. May 6, 2022) .......................2, 4, 10, 12

*Deckers Outdoor Corp. v. Australian Leather Pty. Ltd.*,
    No. 16 CV 3676, 2020 WL 4723980 (N.D. Ill. July 13, 2020) .........................................14, 15

*EagleView Technologies, Inc. v. Xactware Solutions, Inc.*,
    522 F. Supp. 3d 40 (D.N.J. 2021) ......................................................................................2, 12

*Floe Int'l, Inc. v. Newmans' Manufacturing Inc.*,
    No. 04-5120 (DWF/RLE), 2006 WL 2472112 (D. Minn. Aug. 23, 2006) ................................5

*Funai Electric Co. v. Daewoo Electrics Corp.*,
    593 F. Supp. 2d 1088 (N.D. Cal. 2009) ..................................................................................12

*Gorenstein Enterprises, Inc. v. Quality Care-USA, Inc.*,
    874 F.2d 431 (7th Cir. 1989) ....................................................................................................1

*Green Mountain Glass LLC v. Saint–Gobain Containers, Inc.*,
    300 F. Supp. 3d 610 (D. Del. 2018) ........................................................................................14

*Jurgens v. CBK, Ltd.*,
    80 F.3d 1566 (Fed. Cir. 1996) ..................................................................................................5

*Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*,
    806 F.2d 1565 (Fed. Cir. 1986) ................................................................................................5

*Packet Intelligence LLC v. NetScout Systems, Inc.*,
    965 F.3d 1299 (Fed. Cir. 2020) ................................................................................................8

*Pierce Manufacturing Inc. v. E-One, Inc.*,
    No. 8:18-CV-617-TPB-TGW, 2022 WL 479808, at *2 (M.D. Fla. Feb. 16, 2022) ........4, 6, 12

*Polara Engineering Inc v. Campbell Co.*,
    894 F.3d 1339 (Fed. Cir. 2018) ................................................................................................6

*Read Corp. v. Portec, Inc.*,
    970 F.2d 816 (Fed. Cir. 1992) ..................................................................................................2

*In re Seagate Technology, LLC*,
　497 F.3d 1360 (Fed. Cir. 2007) (*en banc*) ...................................................................6

*Stryker Corp. v. Zimmer, Inc.*,
　No. 1:10-CV-1223, 2017 WL 4286412 (W.D. Mich. July 12, 2017)......................................14

*T&M Inventions, LLC v. Acuity Brands Lighting, Inc.*,
　No. 14-C-947, 2016 WL 7441650 (E.D. Wis. Dec. 27, 2016) ................................................15

*Therma-Tru Corp. v. Peachtree Doors Inc.*,
　44 F.3d 988 (Fed. Cir. 1995)...................................................................................................6

*Ultratec, Inc. v. Sorenson Communications, Inc.*,
　323 F. Supp. 3d 1071 (W.D. Wis. 2018) ................................................................................1

*Vectura Ltd. v. GlaxoSmithKline LLC*,
　No. CV 16-638-RGA, 2019 WL 4346502 (D. Del. Sept. 12, 2019) .......................................12

*WBIP, LLC v. Kohler Co.*,
　829 F.3d 1317 (Fed. Cir. 2016)...........................................................................................3, 5

*WCM Industries, Inc. v. IPS Corp.*,
　809 F. App'x 957 (Fed. Cir. 2020) ..........................................................................................6

**Statutes**

35 U.S.C. § 283..............................................................................................................................11

35 U.S.C. § 284................................................................................................................................3

## I. PREJUDGMENT INTEREST

WashWorld agrees the Court should amend the judgment to include prejudgment interest and disagrees only as to the amount. WashWorld agrees it is the general practice of the Federal Circuit and Seventh Circuit to award prejudgment interest based on the prime rate—which is what Dr. McDuff did. WashWorld does not object to Dr. McDuff's calculation. Instead, WashWorld suggests that the Court should calculate interest based on Dover's borrowing rate. Dover is not a party to this litigation. WashWorld has submitted no evidence that Belanger could borrow money at the specified rate, and WashWorld does not cite any case where a Court has awarded interest based on a parent's ability to borrow money.[1] The Court should follow the usual practice and award interest based on the prime rate, which indisputably is $702,317. As Dr. McDuff explains:

> This interest rate is a middle-ground interest rate that compensates the patent holder for the borrowing risk inherent in damages amount that has, in effect, been held at risk by the infringer over the duration of the damages period. This interest rate is greater than the risk-free rate, which does not compensate the patent holder for the risk of held funds, and lower than a weighted average cost of capital interest rate, which would compensate the patent holder for alternative uses of the funds.

Dkt. 238-1 (McDuff Decl.) ¶ 2.

## II. ENHANCED DAMAGES

### A. Why Enhanced Damages Are Important Here

WashWorld's behavior has been egregious. "The paramount determination in deciding to grant enhancement and the amount thereof is the egregiousness of the defendant's conduct based

---

[1] If the Court were to depart from the usual practice, it should look at the interest rate at which **WashWorld** borrows money. Prejudgment interest is to compensate Belanger because WashWorld has held money belonging to Belanger, so the relevant economic question is at what rate would Belanger loan money to WashWorld given WashWorld's credit risk. *Ultratec, Inc. v. Sorenson Communications, Inc.*, 323 F. Supp. 3d 1071, 1080–81 (W.D. Wis. 2018) (citing *Gorenstein Enterprises, Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 437 (7th Cir. 1989)). WashWorld has not provided information regarding the rate at which it borrows money.

1

on all the facts and circumstances." *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826 (Fed. Cir. 1992); *see also Cyntec Co. v. Chilisin Electronics Corp.*, No. 18-CV-00939-PJH, 2022 WL 1443232, at *14 (N.D. Cal. May 6, 2022), *appeal filed* (Fed. Cir. June 6, 2022).[2]

WashWorld's infringement significantly harmed Belanger. In the four years before 2018, Belanger had a 45% market share compared to WashWorld's 55%. Trial Tr. at 423:2–25. By 2021, Belanger's market share had shrunk to 24% while WashWorld's rose to 76%. *Id*. WashWorld used Belanger's patented technology to flip the market. WashWorld will continue to benefit from that going forward. WashWorld has already made over $50 million in sales of the infringing products. The jury's compensatory damages are about a fifth of that, $10,060,000. This is why the verdict is "no big deal" to WashWorld. WashWorld has already won in the market, and payment of $10,060,000 is a modest price to pay for that success. *See, e.g.*, *EagleView Technologies, Inc. v. Xactware Solutions, Inc.*, 522 F. Supp. 3d 40, 55 (D.N.J. 2021) (finding that aggressive, head-to-head competition that lured away customers and decreased patentee's market share was "egregious infringement behavior" that favored awarding treble damages).[3]

WashWorld does not deny that Mr. Jensen said "no big deal" in response to the jury's verdict and the Court's indication that it would likely grant an injunction. WashWorld only says that the word of Belanger's attorneys is not enough. Accordingly, Belanger is submitting the declaration of Mr. David Dougherty, one of the people who heard Mr. Jensen say, as he left the courtroom whistling/humming to himself, "no big deal." Dougherty Decl. ¶ 2.

WashWorld's defense of its behavior rests on the false claim it had a good faith belief in the noninfringement opinion of its counsel. The jury rejected that claim. The Court instructed the

---

[2] Emphasis added and all internal citations and quotations omitted unless otherwise noted.

[3] Belanger cited *EagleView* repeatedly throughout its consolidated memorandum in support of its motions (Dkt. 234-1), and WashWorld has not even attempted to distinguish it.

2

jury to consider WashWorld's claim that "it did not act willfully because it relied on a legal opinion that advised Wash World that the product did not infringe the '041 Patent." Dkt. 222 at 17. The Court instructed the jury it "***must*** evaluate whether the opinion was of a quality that reliance on its conclusions was reasonable." *Id*. In finding WashWorld willfully infringed, the jury rejected WashWorld's claim that it reasonably relied on the advice of its counsel. The Court should credit that verdict. *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016) ("[T]he factual components of the willfulness question should be resolved by the jury."). "Certainly a judge cannot substitute his or her factual determination for a jury's willfulness finding." *Advanced Cardiovascular Systems, Inc. v. Medtronic, Inc.*, 265 F.3d 1294, 1310 (Fed. Cir. 2001).

The verdict form lists no separate remedy for that finding of willfulness, but the jury understood from the Court's response to its note that there would be separate consequences for its finding, and it set its damages award accordingly. Enhanced damages send a message that willful infringement is not allowed. It is a big deal. This is a message WashWorld still has not received. WashWorld continues to say it acted in good faith and downplays the economic harm it caused. Even now it asserts it made only $1,443,400 in revenue—considering only the revenue of the spray arm, not its increased wash system sales. The jury rejected this argument. WashWorld and Belanger do not compete in the market of spray arms, they compete in the market of wash systems, and WashWorld used Belanger's patented technology to take market share from Belanger while making more than $50 million in revenue. This is a big deal to Belanger.

### B. The *Read* Factors

The Court should credit the jury's findings related to the *Read* factors. WashWorld wants to reargue issues the jury has already decided. However, the Court should give weight to the jury's findings; and when that is done, the *Read* factors overwhelming support enhancing damages. The statute allows the Court to treble the compensatory damages. 35 U.S.C. § 284. Belanger believes

3

that is warranted here. But even if the Court only doubles the damages, it sends an important message that WashWorld's willful infringement of a competitor's patent for four years is a big deal. Belanger refers the Court to its opening brief, much of which is unrebutted. Below are specific comments to points raised in WashWorld's opposition.

1. *Read* **Factor 1 – Copying**

WashWorld says there is no evidence it copied Belanger, but it utterly ignores the testimony of its own Director of Operations and Engineering, Jeff Martin. Before designing the Razor EDGE, WashWorld had seen Belanger's products. Trial Tr. at 398:5–19. Belanger's products had been in the market for eight years. *Id*. at 119:14–22. They had been at the major trade shows, including the ones that WashWorld attended. *Id*. at 398:5–19. WashWorld's customers told WashWorld they wanted more lights in the wash bay. *Id*. at 576:5–8. Mr. Martin testified that WashWorld discussed the Belanger products when designing the Razor EDGE (*id.* at 580:1–8) and that one of WashWorld's motivators was to create a light show in the wash bay based on "what other customers have asked for and what we've seen some competitors do as well" (*id*. at 579:6–9)—**WashWorld has no response; it does not even refer to this testimony**.

Rather than acknowledge it discussed Belanger's patented product when designing its copycat system, WashWorld points to the differences between the products. It is irrelevant that the design is somewhat different—it is still based on the Belanger product and includes the patented technology to obtain the same benefits: attract customers, improve navigation, and enhance the customer experience.[4] Trial Tr. at 188:13–192:21, 190:8–15; Trial Exs. 1081, 1363, 1281, 1581, 1354, 1356, 1360; *see, e.g.*, *Cyntec*, 2022 WL 1443232, at *14 (infringer "deliberately

---

[4] *Pierce* is irrelevant because there the question was whether the Court could infer copying based on one of the infringer's employees taking photographs of the patentee's product at a trade show. No. 8:18-CV-617-TPB-TGW, 2022 WL 479808, at *2 (M.D. Fla. Feb. 16, 2022). Here, WashWorld admits it saw the products and admits it considered them when designing its products.

4

copied [patentee's] design" and did not "meaningfully rebut [patentee's] evidence of copying").

## 2. *Read* Factor 2 – Good Faith Belief of Noninfringement

WashWorld ignores the jury's finding that it acted in reckless disregard of Belanger's patent rights and did not act in good faith. WashWorld argues this issue as if the jury's verdict did not exist; however, the Court must credit the jury's determination. *WBIP*, 829 F.3d at 1341; *Advanced Cardiovascular*, 265 F.3d at 1310; *Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1572 (Fed. Cir. 1996) (district court did not have discretion to reweigh evidence concerning opinion of counsel where jury rejected infringer's assertion it acted in good faith); *Floe Int'l, Inc. v. Newmans' Manufacturing Inc.*, No. 04-5120 (DWF/RLE), 2006 WL 2472112, at *2 (D. Minn. Aug. 23, 2006) (accepting jury's determination of lack of good faith and not reweighing evidence). The jury did not just find that WashWorld was wrong about whether it infringed—which happens in every patent trial where the patentee prevails. The jury also found that WashWorld willfully infringed. The Court instructed the jury:

> Infringement is willful if Belanger proves by a preponderance of the evidence that Wash World **knew that it was infringing the patent or acted in reckless disregard of Belanger's rights**. In making this determination, you should consider all of the evidence, including any evidence regarding whether Wash World acted maliciously, deliberately, or in bad faith.

Dkt. 222 at 18. In deciding WashWorld willfully infringed, the jury necessarily found WashWorld knew it was infringing the '041 patent or acted in reckless disregard of it.[5] Pre-verdict, WashWorld did not move for JMOL on willfulness, so it waived the right to challenge the jury's determination. *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1579 (Fed. Cir. 1986).[6]

---

[5] WashWorld wrongly claims it acted immediately—ignoring the fact that it knew since 2016 that Belanger had patents that covered the lighted spray arm and acted in reckless disregard of them.

[6] WashWorld asks rhetorically "why would it file litigation if it did not believe it infringed?", and the answer of course is because Belanger said it was going to sue WashWorld, and so WashWorld decided to act first so it could litigate in its hometown.

5

The Court also instructed the jury to consider WashWorld's argument that "it did not act willfully because it relied on a legal opinion that advised Wash World that the product did not infringe the '041 Patent," and instructed that it "must evaluate whether the opinion was of a quality that reliance on its conclusions was reasonable." Dkt. 222 at 17. In finding willful infringement, the jury necessarily rejected WashWorld's argument that it reasonably relied on the advice of its counsel. As explained in Belanger's opening brief (Dkt. 234-1 at 8–11), there is lots of evidence that it was not reasonable for WashWorld to rely on Mr. Heino's August 15, 2018, letter.[7] The jury agreed with Belanger and found that WashWorld acted with a reckless disregard for Belanger's patent rights. The Court should credit that finding, reject WashWorld's current arguments to the contrary, and find the second *Read* factor strongly supports enhanced damages.[8] *See, e.g.*, *Therma-Tru Corp. v. Peachtree Doors Inc.*, 44 F.3d 988, 996–97 (Fed. Cir. 1995) (sustaining jury's willfulness verdict because reasonable jury could have found that attorney's letters were written in anticipation of litigation and were not competent opinions of counsel).

---

[7] WashWorld argues the jury had no basis for determining whether Attorney Heino's interpretation of cushioning sleeve was reasonable. However, the jury had his letter and was instructed on the meaning of the patent terms. WashWorld was free to argue his interpretation was reasonable, yet chose not to present him (or Dr. Rice) to explain why his opinion was reasonable.

[8] The cases WashWorld cites are inapposite. In *WCM*, the district awarded enhanced damages on remand, which the Federal Circuit affirmed. 809 F. App'x 957, 959 (Fed. Cir. 2020). In *Pierce*, there was no opinion of counsel; there was only a lay witness opinion that depended entirely on his understanding of the claim term "tip load," which is why it mattered that the jury was not instructed on this claim construction issue. 2022 WL 479808, at *2–3. In *Acantha*, the defendants relied on two opinion letters comprising seventy pages of analysis and opinion, and they involved patent attorneys early in the product development process in an effort to avoid infringement. 406 F. Supp. 3d 742, 755, 759 (E.D. Wis. 2019). In *Polara*, the jury rejected the infringer's opinion of counsel defense, and the Federal Circuit vacated and remanded only because the district court did not provide a complete enough explanation in exercising its discretion. 894 F.3d 1339, 1354, 1356 (Fed. Cir. 2018). Neither *Lee* nor *Apple* involved a jury rejecting an infringer's argument that it relied in good faith on an opinion of counsel. *Lexion* found that reliance on an oral opinion of counsel was justified; however, an oral opinion of counsel must still be objective. *See, e.g.*, *In re Seagate Technology, LLC*, 497 F.3d 1360, 1373 (Fed. Cir. 2007) (*en banc*). *Delta T* is irrelevant because WashWorld waived its right to challenge the jury's willfulness determination.

6

Case 1:19-cv-01562-WCG   Filed 09/27/22   Page 10 of 19   Document 264

### 3. *Read* Factor 3 – Litigation Misconduct

Throughout this litigation, WashWorld has taken the path of most resistance. It sued unnecessary parties; it refused to produce basic discovery until compelled; it reneged on its admissions and refused to admit the most basic facts (e.g., is the Razor EDGE a wash system); it filed baseless motions; and it refused to stop selling its infringing products until the Court entered an injunction. WashWorld is not the worst litigant, but its conduct is far below what should be expected in a federal court proceeding, and this factor favors enhanced damages.

#### a. Changing Arguments

During discovery, to streamline the issues for claim construction and trial, Belanger served discovery to identify the claim elements that WashWorld contended were missing from the accused products. In its interrogatories and 30(b)(6) deposition testimony, WashWorld admitted all but two elements of claim 7 were present in its accused products. After discovery closed on August 20, 2020 (Dkt. 36), and Belanger submitted its opening expert report on infringement on August 28, 2020, WashWorld amended its noninfringement contentions twice and flip-flopped.

WashWorld asserts Mr. Martin and Mr. Andreas did not change their story, but this is simply not true.[9] Each of the two men were 30(b)(6) witnesses who were asked to identify each element of claim 7 that WashWorld contended was not present in the accused products. They each identified two elements: the predefined wash area and the foam cushioning sleeve, and at trial were confronted with their contradictory prior testimony. Trial Tr. at 673:20–24, 594:17–597:7. Both

---

[9] WashWorld quibbles that Mr. Andreas did not admit that the spray arm was dependingly mounted because of the phrasing of the question. The question begins by identifying the full claim element and then uses a shorthand that omits the word "dependingly." At the time, WashWorld had not asserted this element was missing—to the contrary it admitted it was present in its interrogatories—and Belanger did not attribute any significance to this omission. Mr. Andreas admitted the element was present and later was asked to identify all of the elements in claims 7 that WashWorld contested. Mr. Andreas did not identify the dependingly mounted element as missing from the accused products.

7

relied on WashWorld's erroneous constructions of cushioning sleeve and wash area that it advanced during claim construction. Neither argument was viable after the Court's claim construction. But WashWorld still would not concede infringement.

At trial, two of the three elements that WashWorld contested were missing from claim 7 (dependingly mounted and relative to a predefined wash area) were elements (i) its corporate designees had admitted were present in the accused products (Trial Tr. at 673:20–24, 594:17–597:7), and (ii) WashWorld admitted in its interrogatories were present (Trial Ex. 1130 at interrogatory no.16, incorporating Trial Ex. 1126). WashWorld absolutely flip-flopped.

At trial, WashWorld also contended it did not have a cushioning sleeve. At their depositions, Messrs. Martin and Andreas identified this element as missing from the accused products, but this was based on WashWorld's proposed claim construction that required the sleeve to be made of foam: "Thick sleeve of extruded foam plastic that acts as a protective cushion to prevent damage." Dkt. 109 at 9. When the Court rejected WashWorld's construction, WashWorld refused to concede infringement, but instead flip-flopped and claimed that a cushioning sleeve was different than a protective sleeve. This is ironic, because WashWorld's proposed construction uses the term "protective." Mr. Heino told WashWorld in 2018 that the blue plastic sleeve was a protective sleeve (Trial Tr. at 663:13–24), but to now admit it had a protective sleeve would be to admit it infringed. So WashWorld flip-flopped and claimed its sleeve did not protect the spray arm and that WashWorld added the blue plastic cover for "aesthetics." *Id.* at 566:8–567:7.[10]

---

[10] WashWorld's current objections regarding Dr. Reinholtz's trial testimony are unfounded, as WashWorld did not make these objections at trial. *Packet Intelligence LLC v. NetScout Systems, Inc.*, 965 F.3d 1299, 1311 (Fed. Cir. 2020). Moreover, to the extent Dr. Reinholtz's responses to WashWorld's arguments are not in his report, that is because WashWorld asserted the arguments after he wrote his report.

### b. Refusal to Produce Discovery

WashWorld only produced the documents it did after Belanger moved to compel (e.g., Dkt. 28, filed on July 13, 2020), and much of it was after Belanger deposed WashWorld's witnesses. For example, in September and November 2020—after Belanger had deposed WashWorld's witnesses—WashWorld produced 38 pages of technical drawings, 95 pages of sales and revenue data, and over 950 pages of invoices.

### c. Unreasonable Litigation Positions

WashWorld is correct that Belanger did not ask the Court along the way to make findings that WashWorld's positions were frivolous, but it certainly could have, and those findings would have been justified. The Court repeatedly denied WashWorld's arguments because there was no grounds for them or they were inconsistent with the Court's prior decisions. If this only occurred once or twice it might be chalked up to zealous advocacy, but the totality of these decisions shows the unreasonable nature of WashWorld's litigation positions.

- Motion to dismiss Dover: "The Court finds no reason to keep [D]over in the case, absent significant change in circumstance. The Court GRANTS [12] motion to dismiss Dover. **Plaintiff has failed to state a claim against Dover**." Dkt. 22 at 1.

- Motion to exclude Dr. Rice's opinions that are inconsistent with the Court's claim construction order: "Therefore, the Court excludes the opinions and testimony that are **inconsistent with the Court's claim construction ruling** concerning the 'wash area.'" Dkt. 174 at 5. "Therefore, the Court excludes the opinions and testimony that are **inconsistent with the Court's claim construction ruling** concerning the 'first line' and 'second line.'" *Id*. at 6. "Therefore, to the extent Dr. Rice opines that the area below the rail system is not part of the 'wash area,' such opinions will be excluded as **inconsistent with the Court's claim construction order**." *Id*. at 8. "To the extent Dr. Rice intends to testify that the area into which the spray arm extends is not part of the wash area, such opinions will be excluded as **inconsistent with the Court's claim construction order**." *Id*. "However, Dr. Rice's opinion that the accused products do not have a 'predefined wash area' is **inconsistent with the Court's claim construction** and must be excluded." *Id*. at 9.

- Motion to exclude the testimony of Dr. McDuff: The Court repeatedly found that WashWorld's challenges went to the weight of the evidence not its admissibility. Dkt. 173 at 4, 6, 7, 8, 9. In addition, WashWorld's challenges were based on a complete

9

- misunderstanding of the law regarding apportionment, the EMVR, and range of damages calculations—errors that WashWorld continues to advance in its post-trial briefs.

- Motion to moot invalidity claims: The Court denied the motion without argument, stating: "Those were **dismissed as part of the summary judgment order** if I recall correctly, and that will be part of the final judgment once all the claims are resolved." Dkt. 217 (2022-01-07 Hr'g Tr.) at 4:16–19.

- Motion to reconsider: "Having reviewed the submissions of the parties, **no grounds in the record** exist to reconsider the Court's decision." Dkt. 202 at 2.

WashWorld's post-trial conduct continues the pattern of contesting everything. It filed a 56-page JMOL brief—yet failed to make a pre-verdict JMOL motion on the grounds it now seeks post-verdict JMOL. It waived those grounds, yet Belanger has to incur the cost to respond. It filed a nine-page brief objecting to $11,760.19 in Belanger's bill of costs. Its argument is legally wrong (*see* Dkt. 261-1), but the lack of proportionality is baffling. Its costs to oppose the motion likely exceed the $11,760.19 at issue. But, this pattern of fighting on everything—even where there are no grounds to do so—has permeated WashWorld's litigation strategy.

Belanger spent a lot of money litigating issues that should never have gotten to motion practice, and this *Read* factor warrants enhanced damages.[11] *See, e.g.*, *Cyntec*, 2022 WL 1443232, at *14 (unreasonable to litigate moot indefiniteness defense through start of trial, driving up costs).

### 4. *Read* Factor 4 – WashWorld's Size and Financial Condition

Belanger agrees that the fourth *Read* factor is not a reason to enhance damages. Its purpose is only to assess whether the defendant has the ability to pay. WashWorld made over $50 million in sales of the accused products. WashWorld can afford to pay enhanced damages.[12]

---

[11] *i4i*, *Barry*, *Milwaukee*, *Sunoco*, *Pierce*, and *Powell* are inapposite; none involve facts like this case, where WashWorld has repeatedly taken unreasonable positions that increased the cost to litigate. *Virnetx* and *Liquid Dynamics* are irrelevant as they do not discuss enhanced damages.

[12] *Wapp* is inapposite; damages here are about 20% of WashWorld's sales of the accused products.

### 5. *Read* Factor 5 – Closeness of the Case

Belanger indisputably won, and it was not close. Belanger proved the sole claim in its counterclaim and achieved the relief it sought, including: a judgment declaring WashWorld has infringed the '041 patent; a judgment declaring WashWorld's infringement was willful; a grant of an injunction pursuant to 35 U.S.C. § 283, enjoining WashWorld from further acts of infringement; and a judgment awarding Belanger compensatory damages from WashWorld's infringement of the '041 patent.[13] Dkt. 15 at 15–16. The only requested remedies that remain are the ones in this motion: Belanger's requests for attorney fees, costs, interest, and enhanced damages.

In contrast, WashWorld failed to prove either of its declaratory judgment claims and did not obtain any of the relief it sought. Dkt. 1 at 10 (Prayer for Relief). WashWorld's defenses were weak. WashWorld lost on each of the defenses it put at issue in its declaratory judgment complaint—most before trial: infringement, indefiniteness, enablement, written description, obviousness, anticipation, unenforceability, and equitable estoppel. WashWorld points to its noninfringement win for two independent claims. Those arguments turned on disputed issues of claim interpretation. The claim construction disputes regarding those two claims were close. What is not close is the fact that WashWorld lost on the overall issue of infringement. Belanger is not required to show infringement of every claim to prove its claim—infringement of one claim is enough and WashWorld had no viable defense regarding claim 7 or its dependent claims.[14]

---

[13] WashWorld is incorrect about the jury's damages award being below the amount Dr. McDuff testified would be appropriate. Dr. McDuff testified that if the jury believed that Belanger would have captured 20% of the infringing sales, then it should award $9.8 million in lost profit damages and $260,000 in royalty damages (Trial Tr. at 444:3–20), which is what the jury awarded.

[14] WashWorld's noninfringement defense was so weak it did not call its expert at trial to refute Dr. Reinholtz. WashWorld now says Dr. Rice's *report* says there was no cushioning sleeve; however, that opinion was based on WashWorld's proposed construction—which the Court rejected—and WashWorld did not feel confident enough in Dr. Rice's testimony to call him at trial.

Belanger proved that WashWorld infringed the '041 patent.[15] *See, e.g.*, *EagleView*, 522 F. Supp. 3d at 52 (case was "not close" where patentee "won every significant issue at trial").

### 6. *Read* Factors 6 & 7 – Duration of Infringement and Remedial Action

WashWorld acknowledges it took no steps to stop its infringement before the jury verdict. WashWorld admits it continued shipping new units after the verdict. It only stopped after Belanger told WashWorld it would owe additional damages on those units and any future sales. WashWorld still has not agreed to pay the damages associated with its post-verdict sales. Belanger would have had no issue with WashWorld needing time to implement the injunction, but it did not request time to do so. The injunction issued and WashWorld simply failed to comply with it until Belanger asked it to do so.[16] *See, e.g.*, *Cyntec*, 2022 WL 1443232, at *15 (infringer continued to copy patentee's technology and sell infringing products through at least trial).

### 7. *Read* Factor 8 – Motivation to Harm

As noted in Belanger's opening brief, this factor is neutral.

### 8. *Read* Factor 9 – Concealment

WashWorld does not address the fact that its lawyer was telling it something different than

---

[15] Unlike the cases it relies on, WashWorld did not prevail on any patents or products—all of the accused products were found to infringe the only patent at issue. In *Funai*, the infringer "prevailed as to three out of the six patents." 593 F. Supp. 2d 1088, 1115 (N.D. Cal. 2009). In *Acantha*, this Court found that one of the two accused products did not infringe. 406 F. Supp. 3d at 753, 760. In *Pierce*, there was a split verdict, with the jury finding defendants proved that "the broadest claim in [the] lawsuit" was invalid. 2022 WL 479808, at *3. In *Vectura*, "Defendants' obviousness defense was presented to the jury, and it made the case at least relatively close." No. CV 16-638-RGA, 2019 WL 4346502, at *4 (D. Del. Sept. 12, 2019). Although Judge Andrews "do[es] not think the length of jury deliberations is a meaningful metric" (*id.* at *4 n.3), other courts do. *See, e.g.*, *EagleView*, 522 F. Supp. 3d at 52.

[16] This Court noted in *Acantha* that it would have given more weight to Factors 6 and 7 if it had not found the defendants had a good faith basis for their defenses. 406 F. Supp. 3d at 761. Here, WashWorld presented its argument to the jury and the jury found it did not act in good faith.

12

what it was telling Belanger. In rejecting WashWorld's opinion of counsel defense, the jury found the Heino letter was not a reasonable, objective opinion upon which WashWorld should have relied. WashWorld hid its actual beliefs from Belanger. It knew about Belanger's patents; it knew it was infringing; and it tried to conceal the weakness of its noninfringement positions from Belanger. It hoped to intimidate Belanger and make Belanger go away. But Belanger did not go away. At great cost, Belanger successfully defended its patent rights.[17]

*\*\*\**

The *Read* factors overwhelmingly favor Belanger and justify enhancing the damages award to punish WashWorld for its egregious conduct. It is not alright to take a competitor's patented technology; to use it in designing an infringing product; to use that patented technology to take business away from the patent owner; and then make the competitor take a case all the way through trial just to get what it should have had all along—the exclusive rights to its invention. The jury recognized what WashWorld did was wrong. Belanger asks the Court to provide a meaningful remedy to the jury's finding that WashWorld willfully infringed Belanger's patent.

### III. ATTORNEY FEES

#### A. This Is an Exceptional Case

For many of the same reasons that the Court should enhance the damages award, the Court should also award Belanger its attorney fees. As discussed above (*supra* at § II.B.2.), the jury found WashWorld did not have a good faith belief it was not infringing Belanger's patent and acted in reckless disregard of Belanger's patent rights. WashWorld copied Belanger's products and used its infringing products to take market share from Belanger. WashWorld fought to the very end, continuing to ship infringing systems until the Court enjoined it from doing so.

---

[17] *Pierce* is inapposite; Belanger has not accused WashWorld of attempting to conceal the accused products. The *i4i* decision WashWorld cites does not discuss the alleged concealment in that case.

13

WashWorld profited greatly from its infringement. WashWorld's willful infringement is a sufficient basis for awarding attorney fees. *See, e.g.*, *Stryker Corp. v. Zimmer, Inc.*, No. 1:10-CV-1223, 2017 WL 4286412, at *6 (W.D. Mich. July 12, 2017), *aff'd*, 745 F. App'x 167 (Fed. Cir. 2018); *Deckers Outdoor Corp. v. Australian Leather Pty. Ltd.*, No. 16 CV 3676, 2020 WL 4723980, at *7 (N.D. Ill. July 13, 2020) ("Willfulness alone can justify an exceptional-case finding...."), *aff'd*, 847 F. App'x 917 (Fed. Cir. 2021).

In its brief, Belanger said that this was the first time counsel was aware of a jury sending a note to the Court asking how it could award attorney fees. WashWorld does not contest the unusual nature of the note. Although the Court must decide the issue, the Court should give weight to the jury's opinion.[18] The jury strongly believed that the facts presented at trial alone warranted attorney fees. Moreover, the jury was unaware of the additional evidence Belanger has presented regarding WashWorld's out-of-court conduct, which can only enhance the basis for an award of attorney fees. The Court can and should also look at the unreasonable manner in which WashWorld litigated this case, and that too is discussed above (*supra* at § II.B.3).

### B. Belanger's Attorney Fees Are Reasonable

WashWorld admits Belanger proffered its hourly rates and the amount of time each employee spent on the case but complains that there is "no additional information to determine whether its fee request is reasonable." WashWorld ignores important evidence, including:

- Evidence that Belanger's overall attorney fees were 40% lower than similar patent cases based on the 2021 AIPLA survey. Dkt. 237-1 at ¶ 15.

- Evidence that Fish & Richardson's rates are reasonable and comparable to its peer firms. *Id.* at ¶¶ 13–14.

---

[18] Unlike the situation here, *Acantha* and *Green Mountain* were actually close cases and thus did not stand out from other cases. In *Acantha*, this Court found one of the two accused products did not infringe. 406 F. Supp. 3d at 753, 760. In *Green Mountain*, the defendant "prevailed at trial on non-infringement on one of the two patents at issue." 300 F. Supp. 3d 610, 629 (D. Del. 2018).

- A description of each of the four attorney's and paralegal's roles in the case, which show the major projects they worked on. *Id.* at ¶¶ 6–11.

- A breakdown in the number of hours for each attorney, showing that most of the work was conducted by the two principals who tried the case. *Id.* at ¶ 12.

- Evidence that Belanger has paid the invoiced amounts. *Id*. at ¶ 17.

WashWorld notes that Belanger submitted information showing the dates and hours each attorney worked. Belanger remains willing to submit its daily narrative descriptions—which are privileged—for the Court's *in camera* review. Notably, WashWorld does not assert the hours Belanger's attorneys worked on this case are out of line with the hours its attorneys worked.[19]

\*\*\*

The Court should award Belanger $2,044,399 in attorney fees to cover the costs Belanger incurred to defend its patent rights. Since filing its motion for attorney fees on August 23, 2022, Belanger has incurred an additional $159,552 in attorney fees, bringing its total claim to $2,044,399. Dillon Supp. Decl. ¶ 2.

Dated: September 27, 2022              FISH & RICHARDSON P.C.

By:  */s/ Christopher R. Dillon*
Christopher R. Dillon
Whitney A. Reichel
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210-1878
Tel: (617) 542-5070
Fax: (617) 542-8906
Attorneys for Belanger, Inc.

---

[19] In *T&M*, this Court explained that "Courts in this circuit have routinely relied on the American Intellectual Property Law Association (AIPLA) survey to determine the reasonableness of requested fees." No. 14-C-947, 2016 WL 7441650, at \*1 (E.D. Wis. Dec. 27, 2016). This Court agreed with the patentee that its requested fees were "reasonable as reflected by the data in the AIPLA survey." *Id.* at \*1–2. This Court reduced certain fees only because a firm billed in quarter-hour increments, rather than tenth-hour increments, and an attorney attended trial but "did not sit at counsel table or participate in the trial." *Id.* at \*3–4.